* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and arguments of the parties. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. At the time of the injury giving rise to this claim, February 8, 2000, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. An employment relationship existed between employee-plaintiff and employer-defendant on February 8, 2000.
4. Federated Mutual Insurance Company was the carrier on the risk for employer-defendant on the date of injury.
5. Defendants admit that plaintiff sustained an injury by accident to her right knee on February 8, 2000. Plaintiff alleges that she also developed a condition in her left knee, which is causally related to the original accident and treatment for her right knee injury. Defendants deny that plaintiff's left knee condition is related to the original accident and resulting treatment to her right knee.
6. At the time of the accident on February 8, 2000, plaintiff earned an average weekly wage of $447.50, thus yielding a compensation rate of $298.34.
 * * * * * * * * * * * EXHIBITS
The following were marked and received into evidence as:
1. Stipulated Exhibit Number 1, Pre-Trial Agreement
2. Stipulated Exhibit Number 2, Medical Records
3. Stipulated Exhibit Number 3, Industrial Commission Forms
 * * * * * * * * * * *
The following were received into evidence as:
 DEPOSITIONS
1. Oral deposition of Richard Alioto, M.D., taken on September 12, 2005.
2. Oral deposition of Ibrahim Naim Oudeh, M.D., taken on September 16, 2005.
 EVIDENTARY RULINGS
The objections raised in the depositions are ruled upon according to the law and are consistent with this Opinion and Award.
 * * * * * * * * * * *
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. On February 8, 2000, plaintiff sustained an injury by accident to her right knee, which defendants accepted as compensable by filing a Form 60 Employer's Admission to Employee's Right to Compensation.
2. On March 10, 2000, plaintiff underwent arthroscopic surgery with a medial menisectomy of her right knee, which was performed by Dr. Jay Parikh at Orthopedic and Sports Medicine Center. Following the surgery, plaintiff continued to experience pain and swelling in her right knee despite a course of physical therapy and pain medication. Dr. Parikh ordered a second MRI of plaintiff's right knee, which showed evidence of another meniscus tear. It was Dr. Parikh's opinion that plaintiff would need another surgery if her symptoms persisted. At this time, Dr. Parikh referred plaintiff for a second opinion evaluation with Dr. Richard Alioto at University Orthopedics and Sports Medicine.
3. On August 1, 2000, Dr. Alioto examined plaintiff and reviewed her MRI scan. Dr. Alioto concurred with Dr. Parikh's surgical recommendation and plaintiff elected to have Dr. Alioto perform the procedure on August 25, 2000.
4. Following the surgery, Dr. Alioto noted that plaintiff's complaints of pain were out of proportion with her physical examination. Dr. Alioto diagnosed plaintiff with reflex sympathetic dystrophy [hereinafter "RSD"], which was confirmed by a second opinion evaluation with Dr. Douglas Martini at Garner Orthopedic and Sports Medicine Specialists. Plaintiff received lumbar sympathetic blocks to manage the pain caused by the RSD.
5. During postoperative physical therapy treatment plaintiff sustained an injury to her knee, which required ACL reconstructive surgery. Defendants contested the compensability of this injury. On June 20, 2004, Deputy Commissioner Morgan S. Chapman filed an Opinion and Award concluding that plaintiff's ACL tear was a direct and natural result of the compensable right knee injury by accident. Deputy Commissioner Chapman did not address any conditions involving plaintiff's left knee. Defendants did not move for reconsideration of the Opinion and Award with Deputy Commissioner Chapman nor did defendants file an appeal to the Full Commission.
6. On October 20, 2004, Dr. Alioto performed arthroscopic assisted ACL reconstruction of plaintiff's right knee. For the first four to six weeks following surgery, Dr. Alioto restricted plaintiff's weight-bearing on the right leg.
7. In 2003, plaintiff reported increased pain and swelling in her left knee to her family physician, Dr. Ibrahim N. Oudeh. In January 2005, approximately two months following her ACL right knee surgery, plaintiff returned to Dr. Oudeh with complaints of left knee pain. Plaintiff denied she sustained any recent trauma to the left knee. As a result of her complaints of pain, Dr. Oudeh requested an MRI scan of the left knee, which revealed a possible tear on the posterior medical meniscus and loose body in the left knee. Dr. Oudeh referred plaintiff to an orthopaedic surgeon for further evaluation and treatment.
8. On January 20, 2005, plaintiff reported her left knee complaints to Dr. Alioto, who reviewed the MRI scans of both the right and left knees. Plaintiff did not report a specific incident, which precipitated her left knee problems. She did express to Dr. Alioto that she felt her left knee was hurting due to "putting all the weight on it from her right knee." Dr. Alioto did not treat plaintiff's left knee as defendants would not authorize any treatment for the left knee. Plaintiff continues to seek treatment for her left knee with Dr. Oudeh.
9. After her October 24, 2004 right ACL surgery, plaintiff has been unable to drive and has relied on her husband to transport her to and from medical appointments. As a result of her knee conditions, plaintiff has difficulty entering and exiting automobiles without assistance. Further, due to numerous medical issues, including two heart attacks, a stroke, diabetes, and malignant hypertension, plaintiff's husband is physically unable to assist her in and out of the automobile. As of the date of the hearing before the Deputy Commissioner, Dr. Oudeh has restricted plaintiff from driving. Plaintiff is still attending physical therapy appointments on a weekly basis and has requested that defendants provide transportation to and from her medical appointments. As of the date of the hearing before the Deputy Commissioner, plaintiff has not returned to work for any employer.
10. Dr. Alioto testified that it is normal for a patient to initially become dependent on the opposite knee over the knee that has undergone surgery. Additionally, it is not unusual to experience some pain in the non-operated knee. However, Dr. Alioto opined that it is unlikely that plaintiff sustained a torn meniscus of the left knee as the result of overcompensating due to the inability to bear weight on the right leg. Dr. Alioto further stated that in his practice, "It seems to me that the only ones you ever see that become an issue are workmen's compensation patients who tend to have a problem with — you know, a problem with the other knee, and then having to have it looked at, an MRI scan and stuff."
11. As plaintiff's family physician, Dr. Oudeh has treated plaintiff before, during, and after her three right knee surgeries. Dr. Oudeh opined to a reasonable degree of medical certainty that plaintiff's left knee injury is a result of her overcompensating with the left leg due to her inability to bear weight on the right leg. Dr. Oudeh's opinion was based on plaintiff's medical history, the fact that she did not report a specific trauma to the left knee, and the fact that her left knee complaints began after the three surgeries to her right knee.
12. Both treating physicians indicate that it is natural for a patient to overuse the opposite leg while the surgically repaired leg heals. Plaintiff had three right knee surgeries as a result of her compensable right knee injury. Approximately two months following her third right knee surgery, Plaintiff sought medical treatment from Dr. Oudeh for pain and swelling of the left knee for which she did not report an inciting incident. Dr. Oudeh has treated plaintiff for over fifteen years, treated plaintiff before, during and after her three right knee surgeries and treats plaintiff's left knee condition. Therefore, the undersigned assigns greater weight to the medical opinion of Dr. Oudeh on the issue of causation.
14. Plaintiff has proven by the greater weight of the evidence that her left knee condition is the direct and natural consequence of her compensable right knee injury.
15. The issue regarding the compensability of plaintiff's left knee condition was not raised or fully litigated in the hearing before Deputy Commissioner Chapman. Prior to the hearing before the undersigned, there has not been a final adjudication on the merits based on a claim for Plaintiff-Employee's left knee condition.
16. Defendants had reasonable grounds to defend this claim.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the undersigned concludes as follows:
 CONCLUSIONS OF LAW
1. The purpose of the doctrines of res judicata and collateral estoppel are to protect litigants "from the burden of relitigating previously decided matters and promoting judicial economy by preventing needless litigation." Williams v. City of Jacksonville PoliceDep't, 165 N.C. App. 587, 591, 599 S.E.2d 422, 427 (2004). At the previous hearing before Deputy Commissioner Chapman, the claim for Plaintiff-Employee's left knee condition was not raised or litigated. Deputy Commissioner Chapman did not address the left knee condition in her Opinion and Award. Therefore, the doctrines of res judicata and collateral estoppel do not apply to Plaintiff-Employee's claim for her left knee condition.
2. On February 8, 2000, Plaintiff-Employee sustained a compensable injury by accident to her right knee. Her left knee condition is a direct and natural result of the injury by accident giving rise to this claim. N.C. Gen. Stat. § 97-2(6); Heatherly v. MontgomeryComponents, 71 N.C. App. 377, 323 S.E.2d 29 (1984).
3. As a result of her compensable injuries, Plaintiff-Employee is entitled to ongoing temporary total disability at the compensation rate of $298.35 and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
4. As a result of her compensable injuries, Plaintiff-Employee has received medical treatment and is entitled to receive further medical treatment that would effect a cure, give relief or lessen her period of disability. N.C. Gen. Stat. § 97-25.
5. Defendants are responsible for providing accessible transportation services to Plaintiff-Employee for such reasonable appointments outside her home to which she might otherwise have driven herself but for her compensable injuries, and as may be medically necessary to effect a cure or provide relief. N.C. Gen. Stat. § 97-25.
6. Plaintiff-Employee is not entitled to have attorney's fees assessed against Defendants since there were reasonable grounds to defend this claim. N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing Findings of Facts and Conclusions of Law, the undersigned enters the following:
 AWARD
1. Subject to a reasonable attorney's fee approved herein, Defendants shall pay to Plaintiff-Employee ongoing temporary total disability compensation at the rate of $298.35 per week and continuing until further order of the Industrial Commission.
2. Defendants shall pay all medical expenses incurred and to be incurred as a result of the injuries to both of Plaintiff-Employee's knees when bills for the same have been submitted to and approved by the Industrial Commission, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen Plaintiff-Employee's period of disability.
3. Defendants shall provide accessible transportation services to Plaintiff-Employee for such reasonable medical appointments outside her home to which she might otherwise have driven herself but for her compensable injuries.
4. A reasonable attorney's fee of 25% of the ongoing compensation due Plaintiff-Employee under Paragraph 1 of this AWARD is hereby approved for Plaintiff-Employee's counsel. Defendants shall send every fourth compensation check to Plaintiff-Employee's counsel.
5. Defendants shall pay the costs.
 S/_____________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________________ THOMAS J. BOLCH COMMISSIONER