STEPHENS, Judge.
 

 In this appeal, we consider whether Plaintiffs' malicious prosecution claims under North Carolina law brought in Guilford County Superior Court are barred by the doctrine of collateral estoppel as a result of the dismissal under Federal Rule of Civil Procedure 12(b)(6) of certain federal law claims brought in Plaintiffs' earlier federal lawsuit against Defendants. Because we conclude that dismissal of federal claims pursuant to Federal Rule 12(b)(6) is not an adjudication on the merits for purposes of collaterally estopping a plaintiff from raising the same issues under state law in our State's courts, we affirm the trial court's order denying Defendants' motion to dismiss on the basis of collateral estoppel.
 

 Factual and Procedural Background
 

 This appeal arises from claims and counterclaims of racial discrimination, misconduct, and conspiracies by various factions in the Greensboro Police Department ("GPD") and the government of the City of Greensboro ("the City"). In simplified form, some African American GPD officers alleged that a secret unit of Caucasian GPD officers was
 targeting them for improper investigations based on their race, while some of the accused Caucasian officers denied those allegations and instead asserted that
 
 they
 
 were the victims of racially motivated false claims and criminal charges.
 

 In June 2005, GPD Officer James Hinson and other African American GPD officers accused then-GPD Chief David Wray of using certain Caucasian officers of the Special Investigation Section ("SIS"), a subdivision of the GPD, to surveil and target African American GPD officers. Officially, the SIS was tasked with duties such as protecting celebrities who visited Greensboro, investigating allegations of criminal activities by GPD officers, and handling other sensitive police matters.
 
 [1]
 

 Hinson alleged that one tool the SIS used in its supposed racial misconduct against African American GPD officers was a binder containing photographs of African American GPD officers known as the "black book." The SIS did in fact have a black binder which contained photo arrays of African American GPD officers, but SIS officers asserted that the photos were only those officers who had been on duty at the time of an alleged sexual assault by a uniformed African American GPD officer and that the binder was shown only to the victim of the alleged sexual assault as part of an SIS investigation into the matter.
 

 After learning of Hinson's claims, Defendant Mitchell Johnson, who was employed by the City first as Assistant City Manager and later as City Manager, and who also served on the City Council, met with attorneys representing some of the African American GPD officers who made the allegations against the SIS. After that meeting, Johnson instructed the City Attorney's Office to initiate an investigation of Plaintiffs William Thomas Fox and Scott Everett Sanders, two Caucasian GPD officers alleged to have been part of the SIS group racially targeting African American officers. Johnson and the City Council also contracted with Risk Management Associates, Inc., ("RMA") to conduct a private investigation of Plaintiffs and the SIS to supplement the official City investigation. Plaintiffs contend that the investigations were initiated by Johnson as part of a plan to pressure Wray into resigning as well as to tarnish Plaintiffs' own reputations and ultimately remove them from their positions with the SIS.
 

 In the midst of the official and private investigations, on 9 January 2006, Wray resigned as GPD Chief, and Defendant Timothy R. Bellamy was appointed as acting Chief and then Chief of the GPD. A few days later, the Federal Bureau of Investigation ("FBI") began its own investigation into the actions of Wray and Plaintiffs. After learning that the FBI investigation revealed no evidence of civil rights violations by Wray, Fox, or Sanders, Bellamy directed Johnson to request an investigation by the State Bureau of Investigation ("SBI"). In the course of its investigation, the SBI interviewed numerous GPD officers, including defendants Gary R. Hastings and Martha T. Kelly. Plaintiffs contend that Bellamy and Johnson sought the SBI investigation despite knowing that the allegations of wrongdoing by Fox and Sanders were false. Plaintiffs further assert that Hastings and Kelly gave false information to the SBI and destroyed and/or refused to turn over to the SBI evidence and information that was favorable to Fox and Sanders. The SBI investigation concluded in the fall of 2007, and resulted in the indictment of Fox on one count each of felonious obstruction of justice and felonious conspiracy, while Sanders was indicted on one count of accessing a government computer without authorization, two counts of felonious obstruction of justice, and one count of felonious conspiracy.
 

 Following a trial in February 2009, a jury found Sanders not guilty of improperly accessing a government computer. As a result of a post-trial
 
 Brady
 

 [2]
 
 motion by Sanders, previously undisclosed statements came to light, leading to the dismissal of all the remaining charges against both Plaintiffs.
 

 Plaintiffs contend those exculpatory statements had been intentionally and maliciously suppressed by Hastings and Kelly, among others, as part of a conspiracy against Plaintiffs.
 

 Plaintiffs filed a complaint on 23 March 2010 against Johnson, Bellamy, Hastings, and Kelly, as well as the City, RMA, and GPD officers John Slone and Ernest Cuthbertson (collectively, "the federal defendants") in the United States District Court for the Middle District of North Carolina.
 
 See
 

 Fox v. City of Greensboro,
 

 807 F.Supp.2d 476
 
 (2011). In their complaint, Plaintiffs alleged claims for
 

 violation of
 
 42 U.S.C. § 1981
 
 by the City and Johnson (Counts Two & Three); violation of the Fourth Amendment by the City, Johnson, Bellamy, Hastings, and Kelly (Counts Four & Five); and violation of
 
 42 U.S.C. § 1985
 
 by Johnson, Bellamy, Hastings, Kelly, Slone, Cuthbertson, and RMA (Counts Six & Seven). Plaintiffs also allege[d] a variety of state-law claims against various combinations of Defendants: declaratory judgment regarding indemnification of litigation expenses (Count One); malicious prosecution (Counts Eight and Nine); abuse of process (Counts Ten and Eleven); negligence (Count Twelve); defamation (Count Thirteen); civil conspiracy (Counts Fourteen and Fifteen); and punitive damages (Count Sixteen).
 

 Id.
 

 at 483-84
 
 . After the federal defendants moved to dismiss, Plaintiffs sought and were granted leave by the federal court to amend their complaint to "clarify and amplify the factual basis for their allegations."
 

 Id.
 

 at 501
 
 . Plaintiffs filed their amended complaint on 1 April 2011. The federal defendants then moved to dismiss the amended complaint, including,
 
 inter alia,
 
 Plaintiffs' claims "that the City, Johnson, Bellamy, Hastings, and Kelly took certain actions ... that led to 'unfounded' criminal charges against Plaintiffs (which ultimately terminated in their favor) and the arrest and detention of Plaintiffs in violation of their Fourth Amendment right to be free from unreasonable searches and seizures."
 

 Id.
 

 at 491
 
 . Specifically as to those Fourth Amendment claims, "Defendants argue[d] that Plaintiffs' vague allegations d[id] not sufficiently indicate that each Defendant performed actions proximately causing Plaintiffs' indictment and arrest."
 

 Id.
 

 The federal court dismissed with prejudice all of Plaintiffs' federal law claims, including the Fourth Amendment claims.
 

 Id.
 

 at 501
 
 . In addition, noting that, "[u]nder
 
 28 U.S.C. § 1367
 
 (c), a federal district court may decline to exercise supplemental jurisdiction over such state-law claims if the district court has dismissed all claims over which it has original jurisdiction [,]" the federal court "decline[d] to exercise supplemental jurisdiction over [Plaintiffs'] state-law claims[,]" which it dismissed without prejudice.
 

 Id.
 

 at 500
 
 (citation and internal quotation marks omitted).
 

 On 23 January 2012, Plaintiffs filed a complaint ("the state complaint") in Forsyth County Superior Court
 
 [3]
 
 against all of the federal defendants except RMA, and added Defendant Norman O. Rankin, another GPD officer (collectively, "the state defendants"). The state complaint alleged the following claims: malicious prosecution, abuse of process, civil conspiracy, and punitive damages against Johnson, Bellamy, and Hastings; malicious prosecution and abuse of process against Kelly; civil conspiracy and punitive damages against Cuthbertson, Slone, and Rankin; and declaratory judgment, malicious prosecution, abuse of process, and punitive damages against the City. Johnson, Bellamy, Hastings, and Kelly ("Defendants") were sued in both their official and individual capacities, while Cuthbertson, Slone, and Rankin were sued only in their individual capacities.
 

 On 24 February 2012, the individual state defendants moved to dismiss all claims against them "because [the complaint] fails to sufficiently plead a conspiracy, abuse of process, and other matters."
 
 See
 
 N.C. Gen.Stat. § 1A-1, Rule 12(b)(6) (2013). The City also moved to dismiss. At the motion hearing, the state defendants argued that Plaintiffs'
 

 claims were barred by,
 
 inter alia,
 
 the statute of limitations, the intracorporate conspiracy doctrine, collateral estoppel, and the failure to plead sufficient facts. On 11 July 2012, the trial court granted the motion to dismiss as to the City and dismissed all claims against it with prejudice, a ruling that also effectively eliminated Plaintiffs' claims against the individual state defendants in their official capacities.
 
 See
 

 Moore v. City of Creedmoor,
 

 345 N.C. 356
 
 , 367,
 
 481 S.E.2d 14
 
 , 21 (1997) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. Thus, where the governmental entity may be held liable for damages resulting from its official policy, a suit naming public officers in their official capacity is redundant.") (citations and internal quotation marks omitted). On 14 August 2012, the trial court entered an order dismissing Plaintiffs' civil conspiracy and abuse of process claims against the remaining state defendants in their individual capacities, but "otherwise denied" the motions to dismiss, leaving intact Plaintiffs' malicious prosecution claims against Defendants in their individual capacities.
 

 Defendants appealed from the trial court's 14 August 2012 order, contending that the trial court erred by failing to dismiss Plaintiffs' malicious prosecution claims pursuant to Rule 12(b)(6). Plaintiffs cross-appealed from the trial court's dismissal of their civil conspiracy and abuse of process claims. In an unpublished opinion entered 17 December 2013, this Court dismissed the appeal and cross-appeal as interlocutory.
 
 Fox v. City of Greensboro,
 

 752 S.E.2d 256
 
 (2013),
 
 available at
 
 2013 N.C.App. LEXIS 1321,
 
 disc. review denied,
 

 367 N.C. 494
 
 ,
 
 757 S.E.2d 919
 
 (2014). In its opinion, this Court noted that
 

 collateral estoppel is an affirmative defense that must be pled. However, our Supreme Court has held that the denial of a motion to dismiss a claim for relief affects a substantial right when the motion to dismiss makes a colorable assertion that the claim is barred under the doctrine of collateral estoppel. Thus, collateral estoppel is properly before the trial court if that defense is specifically argued in a motion to dismiss made before a defendant has answered the plaintiff's complaint....
 

 Where an affirmative defense is raised for the first time in a motion to dismiss under Rule 12(b)(6), the motion must ordinarily refer expressly to the affirmative defense relied upon. However, where the non-movant has not been surprised and has full opportunity to argue and present evidence on the affirmative defense, the failure of the motion to expressly refer to the affirmative defense will not bar consideration of the defense by the trial court. Once it is determined that the affirmative defense is properly before the trial court, dismissal under Rule 12(b)(6) on the grounds of the affirmative defense is proper if the complaint on its face reveals an insurmountable bar to recovery.
 

 Id.
 
 at *3, 2013 N.C.App. LEXIS 1321, at *6-7 (citations, internal quotation marks, and brackets omitted). This Court then held that Defendants
 

 did not make any colorable claim of collateral estoppel in their motion to dismiss. In fact, Defendants' motion is devoid of any mention of collateral estoppel. There is no pleading in the record asserting collateral estoppel. Further, Defendants' motion does not reference the prior order of the District Court for the Middle District of North Carolina upon which they base their argument for collateral estoppel. Finally, ... the complaint in the present case makes no mention of the federal court judgment.
 

 It is true that Defendants argued collateral estoppel at the hearing on their motion to dismiss, and that Plaintiffs, without objection, argued against collateral estoppel at that hearing. It also appears that Defendants submitted a brief in support of their motion to dismiss in which they argued collateral estoppel. However, that brief does not appear in the record. Assuming,
 
 arguendo,
 
 the collateral estoppel argument was properly before the trial court, we do not see how the trial court could have granted Defendants' motion to dismiss based upon that argument.
 

 Id.
 
 at *4, 2013 N.C.App. LEXIS 1321, at *8-11 (citations and internal quotation marks omitted).
 

 Following dismissal of the prior appeal, Defendants filed a timely answer to Plaintiffs' complaint on 14 November 2013, specifically pleading the factual basis for their collateral estoppel defense and attaching and incorporating by reference the relevant federal complaint and order upon which that defense is based. On 5 August 2014, Defendants moved for judgment on the pleadings pursuant to Rule 12(c) of our North Carolina Rules of Civil Procedure:
 

 In support of this motion, [D]efendants contend that [P]laintiffs' remaining claim for malicious prosecution is barred by the doctrine of collateral estoppel given the final judgment in the prior case
 
 Fox v. City of Greensboro,
 

 807 F.Supp.2d 476
 
 (M.D.N.C.2011) (
 
 See
 
 Answer, First Defense.) Specifically, the federal court previously dismissed
 
 with prejudice, inter alia,
 
 [P]laintiffs' claim for malicious prosecution rooted in the Fourth Amendment to the Federal Constitution because the alleged misconduct of [D]efendants did not proximately cause them harm. This federal order and judgment therefore bar[s] [P]laintiffs' remaining malicious prosecution claims against [D]efendants because the causation element essential to that state law claim was previously decided against [P]laintiffs by virtue of the federal court's order.
 

 Following a hearing on 4 September 2014, the trial court denied Defendants' motion specifically as to the issue of collateral estoppel by order entered 25 September 2014. From that order, Defendants appeal.
 

 Grounds for Appellate Review
 

 As Defendants note, this appeal is interlocutory.
 

 Interlocutory orders are those made during the pendency of an action which do not dispose of the case, but instead leave it for further action by the trial court in order to settle and determine the entire controversy. As a general rule, interlocutory orders are not immediately appealable. However, immediate appeal of interlocutory orders and judgments is available ... when the interlocutory order affects a substantial right under [N.C. Gen.Stat.] §§ 1-277(a) and 7A-27(d)(1).
 

 .... [The] denial of a motion to dismiss a claim for relief affects a substantial right when the motion to dismiss makes a colorable assertion that the claim is barred under the doctrine of collateral estoppel.... Under the collateral estoppel doctrine, parties and parties in privity with them ... are precluded from retrying fully litigated issues that were decided in any prior determination and were necessary to the prior determination. The doctrine is designed to prevent repetitious lawsuits, and parties have a substantial right to avoid litigating issues that have already been determined by a final judgment.
 

 Turner v. Hammocks Beach Corp.,
 

 363 N.C. 555
 
 , 558,
 
 681 S.E.2d 770
 
 , 773 (2009) (citations and internal quotation marks omitted). As noted
 
 supra,
 
 following dismissal of their previous appeal, Defendants filed an answer in which they specifically asserted collateral estoppel as a defense to Plaintiffs' malicious prosecution claims and moved for judgment on the pleadings based upon their collateral estoppel defense. Defendants having made "a colorable assertion that the claim is barred under the doctrine of collateral estoppel[,]" the denial of their motion for judgment on the pleadings affects a substantial right.
 
 See id.
 
 Accordingly, Defendants' interlocutory appeal is properly before this Court.
 

 Discussion
 

 Defendants argue that the trial court erred in denying their motion for judgment on the pleadings as to Plaintiffs' malicious prosecution claims based on the doctrine of collateral estoppel. We disagree.
 

 I. Relation of the trial court's Rule 12(c) and 12(b)(6) orders
 

 As a preliminary matter, we consider Defendants' assertion that the trial court's August 2012 order denying their Rule 12(b)(6) motion did not bar the trial court from adjudicating Defendants' motion for judgment on the pleadings pursuant to
 Rule 12(c). It is well established that, ordinarily, "no appeal lies from one Superior Court judge to another; that one Superior Court judge may not correct another's errors of law; and that ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action."
 
 Calloway v. Ford Motor Co.,
 

 281 N.C. 496
 
 , 501,
 
 189 S.E.2d 484
 
 , 488 (1972). The only exception occurs when three conditions are met: (1) the subsequent order "was rendered at a different stage of the proceeding, [ (2) ] the materials considered by [the second judge] were not the same, and [ (3) ] the [first] motion ... did not present the same question as that raised by the later motion...."
 
 Smithwick v. Crutchfield,
 

 87 N.C.App. 374
 
 , 376,
 
 361 S.E.2d 111
 
 , 113 (1987) (citation omitted). Defendants argue that all three of the
 
 Smithwick
 
 conditions are satisfied here.
 

 First, Defendants point out that a motion pursuant to Rule 12(c) may be made only after the pleadings are closed, while a Rule 12(b)(6) motion must be made before the pleadings are closed.
 
 See
 
 N.C. Gen.Stat. § 1A-1, Rule 12 ;
 
 see also
 

 Robertson v. Boyd,
 

 88 N.C.App. 437
 
 , 440,
 
 363 S.E.2d 672
 
 , 675 (1988) (noting that "[t]he principal difference between the two motions is that a motion under Rule 12(c)... is properly made after the pleadings are closed while a motion under Rule 12(b)(6) must be made prior to or contemporaneously with the filing of the responsive pleading"). Plaintiffs counter that, because "[b]oth a motion for judgment on the pleadings and a motion to dismiss for failure to state a claim upon which relief should be granted when a complaint fails to allege facts sufficient to state a cause of action or pleads facts which deny the right to any relief[,]"
 

 id.
 

 (citations omitted), there is no "functional" difference between the stage of the proceedings when each motion is decided. We must reject Plaintiffs' contention:
 

 As we have recognized, a complaint is subject to dismissal under Rule 12(b)(6) if no law exists to support the claim made, if sufficient facts to make out a good claim are absent, or if facts are disclosed which will necessarily defeat the claim. On the other hand, a motion for judgment on the pleadings pursuant to Rule 12(c) should only be granted when the movant clearly establishes that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law. Neither rule employs the same standard. It is plainly evident under our Rules of Civil Procedure that because a plaintiff has survived a 12(b)(6) motion, and thus has alleged a claim for which relief may be granted, his survival in the action is not the equivalent of the court determining that conflicting issues of fact exist and no party is entitled to judgment as a matter of law under Rule 12(c).
 

 Cash v. State Farm Mut. Auto. Ins. Co.,
 

 137 N.C.App. 192
 
 , 201-02,
 
 528 S.E.2d 372
 
 , 378 (2000) (citations and internal quotation marks omitted).
 

 Regarding the second and third
 
 Smithwick
 
 conditions, this Court's opinion dismissing Defendants' previous appeal shows that different materials and questions were considered by the trial court in ruling on the respective Rule 12(b)(6) and Rule 12(c) motions. In ruling on Defendants' Rule 12(b)(6) motion, the trial court considered only Plaintiffs' complaint and the arguments of the parties, while the later Rule 12(c) ruling was based upon the trial court's consideration of additional materials: Defendants' answer, the federal complaint, and the federal court's decision. Further, as we observed
 
 supra,
 
 this Court dismissed Defendants' interlocutory appeal precisely because it was not persuaded by Defendants' argument that the trial court's denial of their Rule 12(b)(6) motion "necessarily rejected their argument that Plaintiffs' malicious prosecution claims were barred by collateral estoppel."
 
 Fox,
 

 2013 WL 6667041
 
 , at 2, 2013 N.C.App. LEXIS 1321, at *4. In contrast, the trial court's Rule 12(c) order explicitly ruled on Defendants' collateral estoppel argument. In sum, the Rule 12(c) order appealed from here is not an improper "overruling" by a second superior court judge of an earlier superior court judge's Rule 12(b)(6) order.
 

 II. Standard of review
 

 "A motion for judgment on the pleadings [pursuant to Rule 12(c) ] should not
 be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."
 
 B. Kelley Enters., Inc. v. Vitacost.com, Inc.,
 

 211 N.C.App. 592
 
 , 593,
 
 710 S.E.2d 334
 
 , 336 (2011) (citation and internal quotation marks omitted).
 

 The trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party. All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false. All allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion.
 

 Ragsdale v. Kennedy,
 

 286 N.C. 130
 
 , 137,
 
 209 S.E.2d 494
 
 , 499 (1974) (citations omitted). We review
 
 de novo
 
 a trial court's ruling on a motion to dismiss under Rule 12(c).
 

 Id.
 

 Further, for a Rule 12(c) motion based upon an assertion of collateral estoppel:
 

 In determining what issues were actually litigated or determined by the earlier judgment, the court in the second proceeding is free to go beyond the judgment roll, and may examine the pleadings and the evidence if any in the prior action.... The burden is on the party asserting issue preclusion to show with clarity and certainty what was determined by the prior judgment.
 

 Burgess v. First Union Nat'l Bank of N.C.,
 

 150 N.C.App. 67
 
 , 75,
 
 563 S.E.2d 14
 
 , 20 (2002) (citation, internal quotation marks, brackets, and emphasis omitted).
 

 III. The trial court's rejection of Defendants' collateral estoppel defense
 

 Defendants' collateral estoppel defense is based on their contention that, in its 2011 opinion dismissing,
 
 inter alia,
 
 Plaintiffs' Fourth Amendment claims for failure to state a claim under Federal Rule 12(b)(6), the federal court ruled against Plaintiffs on the same issue of proximate cause applicable to their state malicious prosecution allegations, thereby precluding re-litigation of those claims in Guilford County Superior Court. Although we agree that both Plaintiffs' federal Fourth Amendment claims and their state malicious prosecution claims include the same element of proximate cause,
 
 [4]
 
 after a careful analysis of the procedural posture of the federal case, we are not persuaded that the dismissal of the Fourth Amendment claims for failing to meet the federal "plausibility" pleading standard means "the federal court has already determined that [P]laintiffs cannot establish the same requisite causation element essential to their [state malicious prosecution] claim[s]."
 

 "Under the doctrine of collateral estoppel,
 
 when an issue has been fully litigated and decided,
 
 it cannot be contested again between the same parties, even if the first adjudication is conducted in federal court and the second in state court."
 
 McCallum v. N.C. Coop. Extension Serv. of N.C. State Univ.,
 

 142 N.C.App. 48
 
 , 52,
 
 542 S.E.2d 227
 
 , 231 (citation omitted; emphasis added),
 
 appeal dismissed and disc. review denied,
 

 353 N.C. 452
 
 ,
 
 548 S.E.2d 527
 
 (2001). In addition, "parties are precluded from retrying
 
 fully litigated issues
 
 that were decided in any prior determination, even where the claims asserted are not the same."
 
 Id.
 
 at 51,
 
 542 S.E.2d at 231
 
 (citation omitted). "The elements of collateral estoppel ... are as follows: (1) a prior suit resulting in
 
 a final judgment on the merits;
 
 (2)
 
 identical issues involved;
 
 (3)
 
 the issue was actually litigated in the prior suit
 
 and necessary to the judgment; and
 
 (4) the issue was actually determined.
 
 "
 
 Bluebird Corp. v. Aubin,
 

 188 N.C.App. 671
 
 , 678,
 
 657 S.E.2d 55
 
 , 61 (citation and internal quotation marks omitted; emphasis added),
 
 disc. review denied,
 

 362 N.C. 679
 
 ,
 
 669 S.E.2d 741
 
 (2008). Thus, as an initial step, we must determine whether the federal court's dismissal of Plaintiffs' claims under Federal Rule 12(b)(6) was a final judgment on the merits that actually decided the issue of proximate cause.
 

 It is well settled that "[a] dismissal under [North Carolina Rule of Civil Procedure] Rule 12(b)(6) operates as an adjudication on the merits unless the court specifies that the dismissal is without prejudice."
 
 Hoots v. Pryor,
 

 106 N.C.App. 397
 
 , 404,
 
 417 S.E.2d 269
 
 , 274 (citations omitted),
 
 disc. review denied,
 

 332 N.C. 345
 
 ,
 
 421 S.E.2d 148
 
 (1992) ;
 
 see also
 
 N.C. Gen.Stat. § 1A-1, Rule 41(b) (2013). However, the federal court did not dismiss Plaintiffs' federal claims under North Carolina Rule 12(b)(6), but rather dismissed them pursuant to Federal Rule 12(b)(6).
 
 See
 

 Fox,
 

 807 F.Supp.2d at 484
 
 . No North Carolina case law or statute that we have discovered directly addresses the question of whether a dismissal under Federal Rule 12(b)(6) operates as an adjudication on the merits so as to collaterally estop a plaintiff from re-litigating a claim or issue in our State's courts. Of course, if the evaluation of a claim in light of a motion to dismiss pursuant to Federal Rule 12(b)(6) were identical to the evaluation made in response to a motion under North Carolina Rule 12(b)(6), it would be clear that the federal court's dismissal had adjudicated and settled the same issue Plaintiffs raise in their state complaint. However, our review of the pertinent statutes and case law demonstrates that the standard under Federal Rule 12(b)(6), which the federal court here held Plaintiffs failed to meet, is a different,
 
 higher
 
 pleading standard than mandated under our own General Statutes. In other words, the fact that Plaintiffs' allegations of proximate cause in the federal complaint did not meet the pleading standard under Federal Rule 12(b)(6) does not
 
 necessarily
 
 mean that their allegations of proximate cause would have resulted in dismissal pursuant to North Carolina Rule 12(b)(6).
 

 As the federal court noted in its order, "[t]he purpose of a motion under Federal Rule of Civil Procedure 12(b)(6) is to test[ ] the sufficiency of a complaint and
 
 not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.
 
 "
 

 Id.
 

 (citation and internal quotation marks omitted; emphasis added). In so doing, the federal court explicitly applied the so-called "plausibility" pleading standard as enunciated by the United States Supreme Court in
 
 Bell Atl. Corp. v. Twombly:
 

 Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although the complaint need only "give the defendant fair notice of what the ... claim is and the grounds upon which it rests,"
 
 Bell Atl. Corp. v. Twombly,
 

 550 U.S. 544
 
 , 555,
 
 127 S.Ct. 1955
 
 ,
 
 167 L.Ed.2d 929
 
 (2007) (quoting
 
 Conley v. Gibson,
 

 355 U.S. 41
 
 , 47,
 
 78 S.Ct. 99
 
 ,
 
 2 L.Ed.2d 80
 
 (1957),
 
 abrogated on other grounds by
 

 Twombly,
 

 550 U.S. 544
 
 ,
 
 127 S.Ct. 1955
 
 ,
 
 167 L.Ed.2d 929
 
 ), a plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do,"
 

 id.
 

 [Federal] Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[ ] the[ ] claims across the line from conceivable to plausible."
 

 Id.
 

 at 555, 570
 
 [
 
 127 S.Ct. 1955
 
 ];
 
 see
 

 Ashcroft v. Iqbal,
 

 556 U.S. 662
 
 ,
 
 129 S.Ct. 1937
 
 , 1949-51,
 
 173 L.Ed.2d 868
 
 (2009).
 

 Id.
 
 at 484. As a prior panel of this Court has previously held, the higher federal plausibility pleading standard differs from our State's notice pleading standard:
 

 Plaintiff argues that this [C]ourt should apply the plausibility standard as set forth in
 
 Bell Atlantic Corp. v. Twombly
 
 .... Plaintiff has also correctly noted that to date, North Carolina has not adopted the plausibility standard set forth in
 
 Bell Atlantic
 
 for 12(b)(6) Motions to Dismiss. This Court does not have the authority to adopt a new standard of review for motions to dismiss. Instead, we use the following standard, which is the correct standard of review as used by the North Carolina appellate courts:
 

 On a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the standard of review is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory. The complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt
 that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief.
 

 Holleman v. Aiken,
 

 193 N.C.App. 484
 
 , 490-91,
 
 668 S.E.2d 579
 
 , 584-85 (2008) (citations, internal quotation marks, and brackets omitted).
 

 Given the difference between the federal and State pleading standards, we must conclude that a federal court's dismissal of claims pursuant to Federal Rule 12(b)(6) is not an adjudication on the merits for purposes of collaterally estopping a plaintiff from raising the same or related claims under State law in our State's courts.
 
 See
 

 Hoots,
 

 106 N.C.App. at 404
 
 ,
 
 417 S.E.2d at 274
 
 . In other words, a determination that Plaintiffs' allegations regarding proximate cause in their Fourth Amendment claims did not pass the federal plausibility test does not
 
 automatically
 
 mean they fail to meet the notice pleading requirements of our State. We acknowledge that the federal court's well-reasoned and highly detailed opinion amply demonstrates that the allegations in Plaintiffs' federal complaint regarding proximate cause between Defendants' alleged acts and Plaintiffs' criminal prosecutions were, "to put it charitably, sparse at best."
 
 Fox,
 

 807 F.Supp.2d at 495
 
 . However, the "issue actually litigated in the prior suit ... and ... actually determined" by the federal court,
 
 see
 

 Bluebird Corp.,
 

 188 N.C.App. at 678
 
 ,
 
 657 S.E.2d at 61
 
 (citation and internal quotation marks omitted), was whether Plaintiffs' pleadings met the plausibility standard applicable to motions to dismiss pursuant to Federal Rule 12(b)(6). The federal court's opinion simply did not consider or address the issue of whether Plaintiffs' pleadings sufficiently stated a claim to survive a motion to dismiss pursuant to the notice pleading requirements of North Carolina Rule 12(b)(6). Accordingly, the trial court properly denied Defendants' motion to dismiss pursuant to Rule 12(c) based upon their assertion of collateral estoppel.
 

 We emphasize that our holding here is specific and limited to the sole issue raised by Defendants in
 
 this
 
 appeal: whether Plaintiffs are collaterally estopped from litigating their state malicious prosecution claims in North Carolina courts because the federal court dismissed their federal "malicious prosecution" claims for failing to meet the plausibility standard applicable to motions to dismiss pursuant to Federal Rule 12(b)(6). We express no opinion about whether Plaintiffs' malicious prosecution claims were sufficiently pled under North Carolina Rule 12(b)(6). As noted by this Court in Defendants' previous appeal, that interlocutory issue is not before us at this point.
 
 See, e.g.,
 

 Turner,
 

 363 N.C. at 558
 
 ,
 
 681 S.E.2d at 773
 
 .
 

 In sum, Plaintiffs are not collaterally estopped from bringing their malicious prosecution claims under state law. Accordingly, the trial court did not err in denying Defendants' motion to dismiss on that basis, and its order is
 

 AFFIRMED.
 

 Judges McCULLOUGH and ZACHARY concur.
 

 Prior to June 2005, Hinson himself had been investigated by the SIS for alleged police misconduct.
 

 A criminal defendant is entitled to production of all government evidence favorable to him.
 
 See
 

 Brady v. Maryland,
 

 373 U.S. 83
 
 ,
 
 83 S.Ct. 1194
 
 ,
 
 10 L.Ed.2d 215
 
 (1963).
 

 By consent order entered 12 March 2012, the action was transferred from Forsyth County to Guilford County.
 

 "It is well settled that a plaintiff asserting a constitutional tort under § 1983 must, like any tort plaintiff, satisfy the element of proximate causation."
 
 Fox,
 

 807 F.Supp.2d at 492
 
 (citation, internal quotation marks, brackets, and ellipsis omitted).